## Landis v. Philadelphia & Reading Railway Company.

*Railroads — Negligence — Loitering on crossing—Proximate cause—Presumptions—Defendant responsible for only one of several causes—Burden of proof.*

1. The law does not permit a recovery upon "a supposable theory not supported by established facts."

2. A railroad is under no obligation to take precautions with respect to one walking on or along its tracks, although he be a child of tender years.

3. A person killed while loitering on a public crossing is a trespasser, and there can be no recovery for his death.

4. Where a defendant is responsible for only one of two or more causes and it is equally probable that the accident may have resulted from any one of them, there can be no recovery.

Rule for judgment *non obstante veredicto.* C. P. No. 2, Phila. Co., Dec. T., 1921, No. 4361.

*M. T. McManus,* for plaintiff; *William Clarke Mason,* for defendant.

BARNETT, P. J., 41st judicial district, specially presiding, Nov. 22, 1924.— The plaintiff recovered a verdict of $2165.25 for the death of his son, Donald Landis, alleged to have been caused by the negligence of the defendant. Binding instructions were requested at the trial and refused, and a motion for judgment notwithstanding the verdict is now before us.

The death of the boy, who was eleven years and eleven months of age, occurred in the Borough of Hatfield, Pa., on the night of Aug. 12, 1921. Vine Street, running east and west through the borough, is a side street, not closely built up and little traveled. It is crossed at right angles by the double tracks of the Philadelphia & Reading Railway, the eastern track carrying north-bound and the western south-bound trains. Donald's home was on Vine Street, some distance east of the railway crossing. He was observed, after

dark on the night of the accident, walking westwardly on the south side of Vine Street, and was last seen alive at or just west of the crossing. About fifteen minutes later, a heavy freight train going north at high speed passed over Vine Street, and at the same time another freight train crossed the street, going south. According to witnesses for the plaintiff, the south-bound train was moving at the rate of thirty miles an hour, with engine and tender reversed, without a headlight, and gave no signal by bell or whistle of its approach to the crossing. These facts were contradicted, but, in view of the verdict, must be assumed to be true. An hour after the passage of these trains, a witness, Jordan, heard a call and saw two boys south of the crossing along the tracks. These boys did not appear to testify at the trial and were not identified. Jordan went down the track and found the dead body of Donald Landis about sixteen feet south of Vine Street, the head resting on the end of a cross-tie about one and one-half feet from the outside rail of the south-bound track, the body lying on the cinder bank at right angles to the track. The left side of the head was injured, the left leg broken and the clothing smeared with grease and oil on the left side.

From the foregoing facts, which are a summary of all the evidence favorable to the plaintiff, it might be inferred that the deceased was struck by the south-bound train, either while he was crossing the south-bound track from west to east at the Vine Street crossing, or while he was loitering at the crossing, or while trespassing on the south-bound track, either north or south of the crossing, or that he was struck by the north-bound train, which was not negligently operated, while he was attempting to cross the north-bound track below the crossing, and was thrown over to the west side of the south-bound track. Only under the first hypothesis would the plaintiff be entitled to recover. It may be the best guess, but it is only a guess, and as such does not sustain the plaintiff's burden of proof. The law does not permit a recovery upon "a supposable theory not supported by established facts:" Runkle v. City of Pittsburgh, 238 Pa. 349, 352. A railroad company's right of way upon its tracks, except at lawful crossings, is exclusive. It is under no obligation to take precautions with respect to one walking on or along its tracks, although he be a child of tender years. The only duty it owes to a trespasser is not to injure him wantonly or intentionally: Leithold v. Phila. & Reading Ry. Co., 47 Pa. Superior Ct. 137, 146. If the deceased was loitering on the crossing during the fifteen minutes from the time he was last seen to the time the trains passed, he was a trespasser, and the defendant was not bound to anticipate his presence there. Where a defendant is responsible for only one of two or more causes, and it is equally probable that the accident may have resulted from any one of them, there can be no recovery: Alexander v. Pennsylvania Water Co., 201 Pa. 252, cited in Flanigan v. McLean, 267 Pa. 553, 557. The argument contained in the brief of the learned counsel for the plaintiff that the evidence "clearly puts the boy in a lawful place on the highway, at the crossing," does not help the case. It puts him on the crossing at least fifteen minutes before the train passed, and if this "status is presumed to remain," it makes him a loiterer at the crossing for a quarter of an hour, and not in the exercise of his lawful right to cross the tracks at the crossing.

Two cases, decided upon facts closely analogous to those here involved, seem to be conclusive against the right of recovery in the present case. In Welsh v. Railroad Co., 181 Pa. 461, Patrick Welsh was found, after night, lying between the railway tracks, a few feet from a grade crossing over a borough street. He had evidently been struck by a passing train and suffered injuries of which he died a few hours later. No one saw him on the crossing; though

near it, he was not on it when found; no one saw him struck by a train. If struck by a train, whether he was on the crossing when struck or was approaching it from the railroad track, was not known. Assuming that, as to the general public, the railroad company had been negligent in not operating safety-gates, maintaining a flagman or keeping a sufficient light, the Supreme Court, reversing a judgment for the plaintiff, held the evidence insufficient to connect this negligence with the injury as its proximate cause, saying in their opinion: "But how can we presume the negligence caused the injury when there is no necessary connection between the alleged negligence and the injury? To make the connection, we must presume he was thrown from the crossing to the track; and, further, presume he was lawfully upon the crossing when struck. If he had been seen walking upon it, or even going on the highway towards it, the jury might have found he was lawfully upon it. The law does not presume that the presence of a person upon a railway track is lawful; it will presume that a traveler upon a highway leading to a railroad track crossing is lawfully upon the track for the purpose of crossing it; but, if only found there, he may have been there as a mere loiterer, or he may have been a trespasser walking on the ties to reach a destination not touched by the highway. In this case the jury were permitted to presume negligence on part of defendant, then to presume that deceased was lawfully on the railroad track, and then to still further presume defendant's negligence caused his death. The plaintiff was bound not only to prove negligence as to the general public using the crossing, but to go further and show this negligence was the proximate cause of a particular individual's death, or, as in this case, of Welsh's death. A presumption must be based on a fact or facts, not on a presumption: Railway Co. *v.* Henrice, 92 Pa. 434; Railroad Co. *v.* Evans, 53 Pa. 250, 253." See, also, on the subject of presumptions, Hershinger *v.* Pennsylvania R. R. Co., 25 Pa. Superior Ct. 147, 155; Buck *v.* Quaker City Cab Co., 75 Pa. Superior Ct. 440, 443.

In Cawley *v.* Balt. & Ohio R. R. Co., 44 Pa. Superior Ct. 340, it appeared that the body of the plaintiff's husband was found on the railroad tracks, about thirty feet from a grade crossing over a borough street, a few minutes after a train had gone by. The last person who saw him alive left him at about ten o'clock at night, near the crossing and apparently intending to go to his home, which was on the other side of the tracks, near, but not directly opposite, the crossing. The opinion of the Superior Court contains the following comments on the evidence, all of which we believe to be fully applicable to the facts of the present case:

"Now, it is manifest that if the deceased were walking along the tracks of the defendant company when he was struck; in other words, if the collision occurred, not upon the public highway, but at a point east of it, on the right of way of the defendant company, the plaintiff cannot recover. Before the defendant could be called upon to answer, there must have been a sufficient basis for the conclusion that the deceased was struck while on a public highway where he had a right to be. . . . The body of the deceased was found on the right of way of the defendant company. If he was traveling on that right of way and not on the highway when he was struck, the company is not liable. The inference that he was so struck is certainly as reasonable and probable, under the facts we have recited, as the other inference on which the plaintiff's case entirely rests, to wit, that he was struck while attempting to cross on Hazelwood avenue. In such cases, to permit a jury to draw the inference which convicts the defendant of negligence is but to sanction their conjecture as to the manner in which the deceased met his death. . . . It may

be that if it could have been shown that the deceased in this case was struck while upon the crossing, then the fact that he had been moving along the highway a few minutes before towards the crossing and towards his home might furnish ground for the presumption that he was lawfully upon the crossing. But, having assumed that much, there still remains to be taken the all-important step that carries us to the conclusion that he was struck while thus on the crossing, and it is this assumption which, it seems to us, in the light of the cases, cannot be distinguished from a simple conjecture."

We are, therefore, of the opinion that the jury should have been instructed, as requested in writing by the defendant, that, "under all the evidence in this case, your verdict must be for the defendant."

And now, Nov. 22, 1924, the rule for judgment n. o. v. is made absolute, the verdict is set aside, and the prothonotary is directed to enter judgment for the defendant.

To this decree the plaintiff excepts, and at his instance a bill of exception is sealed.