Opinion by
 

 Hirt, J.,
 

 This action was brought by plaintiff to recover back a hand payment made by her on a contemplated purchase of real estate. By agreement Henry Drizin was eliminated as a defendant in the action. The jury, on a charge of the court as to which there is no complaint, found in favor of the plaintiff for the amount of the deposit with interest, against the remaining defendants, the owners of the land. There is error in the order of the lower court awarding defendants a new trial. The order will be reversed.
 

 Plaintiff inspected the property at 1211 Fanshawe Street in Philadelphia, on November 18, 1947, in response to an advertisement of the defendant owners offering it for sale. She was interested in buying the property and, on the evening of the same day, went with the defendants to the home of Henry Drizin, their lawyer, for the purpose of entering into a written agreement, upon acceptable terms. No agreement was consummated for two reasons; defendants’ lawyer did not have the facilities for preparing a written contract at his home, and Harry A. Eutenberg, plaintiff’s counsel, who was to approve the agreement prior to her execution of it, could not be located. Nevertheless defendants asked for a deposit and in response to their request plaintiff delivered a check, in the sum of $500, to their attorney and took this receipt from him: “Received of Mrs. Rose Milstein, check dated Nov. 18, 1947, on City National Bank in amount of Five Hundred Dollars ($500.00), as deposit on purchase of premises 1211 Fanshawe Street, Philadelphia, including the furniture therein, except the Refrigerator. [Signed] Henry Drizin.” The parties then separated with the understanding that they would meet with their counsel the following day, to prepare the agreement. By the next morning plaintiff had changed her mind because she felt she could not afford the purchase, and she then notified Mr. Drizin that she was
 
 *496
 
 not going to bny the property. Her request for a return of her check was refused. Defendants cashed it as soon as the bank opened and before the bank had notice of plaintiff’s order stopping payment.
 

 Plaintiff testified in effect that she delivered the cheek to defendants’ lawyer with the understanding that it was to be held by him “in escrow” to be delivered to the defendants as a hand payment on the purchase price of the property but only after an agreement in writing on acceptable terms had been entered into by the parties. The testimony of plaintiff’s husband and of their daughter, both of whom were present when the check was delivered, is to the same effect.
 

 The admissions of the defendants and of their attorney in their testimony at the trial establish the validity of plaintiff’s contention. Defendant Pauline Shore testified that a price of $15,000 had been agreed upon, and that after the evening meeting of November 18, 1947, all that remained to be done was to draw up the agreement of sale. But on cross-examination by Mr. Rutenberg, representing plaintiff at the trial, in relation to the deposit, when asked “Was that conditioned upon an agreement that would be satisfactory to their lawyer”: she replied: “Yes. They wanted you to see [the writing] after we drew up the papers . . .” The defendant Nathan Shore admitted that the purpose of the futile effort to reach appellant’s counsel at the time of the evening meeting of the parties in Mr. Drizin’s home “was in order to work out the agreement.” The following testimony of Henry Drizin, on cross-examination by plaintiff counsel, is even more definitely significant: “Q. You were to prepare a formal agreement? A. That’s right. Q. The formal agreement was to be submitted to me for approval? A. That’s right. Q. And the deal was not to be consummated until I approved the agreement? A. That’s right.” It therefore appears that substantially all of the evidence is to the effect that the deposit, improvidently
 
 *497
 
 made by this plaintiff, was conditioned nevertheless upon the subsequent execution of a written agreement on terms acceptable to her and approved by her counsel. And insofar as defendants’ testimony is equivocal this certainly is a case in which the plaintiff may insist upon the benefit of all inferences favorable to her. There was no parol agreement other than a tentative acceptance of $15,000 as the sale price. It is a reasonable inference that if the sale price and the terms of sale had been definitely agreed to, the price and terms would have been recited in Drizin’s receipt for the deposit quoted above. The receipt indicates that all that had been agreed to was that all “furniture therein, except the Refrigerator” was to pass with the sale of the land. That the terms of the agreement were left for future negotiation is indicated also by this testimony of the defendant Nathan Shore: “Q. Was there any discussion about the date fixed for settlement? A. There was not. Q. Was there any discussion about how consideration was to be paid? A. There was not.” Since the contemplated formal agreement was never consummated, the reason that prompted plaintiff to end the negotiations, is unimportant.
 

 The lower court granted a new trial, ostensibly in the exercise of a general discretion, but actually on the mistaken assumption that the testimony established the existence of a definite oral contract, which the plaintiff could not rescind, on the principle of
 
 Roberts v. Roesch,
 
 306 Pa. 435, 440, 159 A. 870. The authorities to that effect have no application to the instant case. Here, as in
 
 Walters v. Federal Life Ins. Co.,
 
 320 Pa. 588, 184 A. 25, the conclusion inducing the grant of a new trial rested solely upon an assumption of fact. It was there held that “determinations in litigation so reached cannot be sustained” and that Avhere the verdict rendered is correct on the proofs submitted, the award of a new trial is reversible error. In
 
 First Nat. Bk. v. Fidelity
 
 
 *498
 

 T. & Tr. Co.,
 
 251 Pa. 536, 542, 97 A. 77, it is said that “The court can abuse its discretionary power as to the law as well as to the facts in passing upon an application for a new trial, and when [as here] a new trial is based on a plain and palpable error of law applicable to the facts of the case, it is such an abuse of discretion as will warrant a reversal”.
 

 March 30, 1950:
 

 These principles, applied to the facts of this case, charge the lower court with abuse of discretion amounting to reversible error.
 

 Order reversed and judgment directed to be entered on the verdict.